IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT R. DUCEY, | ) | Docket No. 05-102-MJR |
| Plaintiff, | ) | |
| | ) | **FILED** |
| -VS- | ) | |
| | ) | SEP 1 4 2006 |
| ROGER E. WALKER; JOHN EVANS; | ) | CLERK, U.S. DISTRICT COURT |
| JULIUS FLAGG; DAVID TRACY; | ) | SOUTHERN DISTRICT OF ILLINOIS |
| CHRISTINE BROWN; KATHY BOCHANTIN; | ) | EAST ST. LOUIS OFFICE |
| Dr. FARANZA SIDDIQUI; Dr. ADRIEN | ) | [X] CIVIL RIGHT COMPLAINT |
| FEINERMAN; WEXFORD HEALTH CARE | ) | Pursuant to 42 U.S.C. §1983 |
| SERVICES, Inc.; JANET SAURHAGE, | ) | (State Prisoner) |
| Defendants. | ) | |

## AMENDED COMPLAINT

I.   JURISDICTION

   A.   Plaintiff's mailing address, register number, and present place of
        confinement is: Scott R. Ducey, K-64368, Hwy. 146 East, PO Box 400
        Vienna, IL. 62995.

   B.   Defendant Roger E. Walker is employed as Director with the Illinois
        Department of Corrections (IDOC), 1307 Concordia Ct., PO Box 19277,
        Springfield, IL. 62794-9277; at the time the Claim(s) in this com-
        plaint arose, Defendant was employed by the State Government, and
        was acting in his official capacity as Director of the IDOC.

   C.   Defendant John Evans is employed as Warden of Pinckneyville Correc-
        tional Center (PKY CC), 5835 St. Rt. 135, PO Box 1000, Pinckneyville,
        IL. 62274-1000; at the time the claim(s) in this complaint arose,
        Defendant was employed by the State Government, and was acting in his
        official capacity as Warden of PKY CC.

D.   Defendant Julius Flagg is employed as assistant Warden of PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in his official capacity as Assistant Warden of PKY CC.

E.   On information and belief, Defendant David Tracy is employed as legal counsel with PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in his official capacity as said legal counsel.

F.   Defendant Christine Brown is employed as Health Care Unit Administrator at PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in her official capacity as Health Care Unit Administrator.

G.   Defendant Kathy Bochantin is employed as Director of Nursing (DON) at PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in her official capacity as DON at PKY CC's Health Care Unit.

H.   Defendant Faranza Siddiqui is employed as the Psychiatrist at PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State government, and was acting in her official capacity as Psychiatrist of PKY CC's Health Care Unit.

I.   Defendant Adrien Feinerman is employed as Medical Doctor (M.D.) at PKY CC, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000;

at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in his official capacity as M.D. at PKY CC's Health Care Unit.

J.  Defendant Wexford Health Care Services, Inc. is a corporation located at 205 Greentree Commons, 381 Mansfield Avenue, Pittsburgh, PA. 15220; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government to provide Health Care Services to the inmates of the IDOC at PKY CC, and was acting in their official capacity under contract with the State of Illinois/IDOC.

K.  Defendant Janet Saurhage is employed as a Registered Nurse at PKY CC's Health Care Unit, 5835 St. Rt. 135, PO Box 1000, Pinckneyville, IL. 62274-1000; at the time the claim(s) in this complaint arose, Defendant was employed by the State Government, and was acting in her official capacity as RN at PKY CC's Health Care Unit.

## II.   PREVIOUS LAWSUITS

A.  Plaintiff has not begun any other lawsuits in State or Federal Court relating to his imprisonment.

## III.   GRIEVANCE PROCEDURE

A.  Pinckneyville Correctional Center has a grievance procedure in place.

B.  Plaintiff presented the facts relating to his complaint by and through the abovementioned grievance procedure.

C.  The following steps were taken in said procedure:

1.  plaintiff filed numerous grievances per institutional procedure after trying to resolve the issue(s) using a more formal approach including, but not limited to, writing numerous letters to the Defendants in an attempt to gain relief.

2.  The result of said grievances was that of denial of all grievances or the issues were never properly addressed due to PKY CC's egregious grievance policies and procedures.

IV    STATEMENT OF CLAIM - COUNT I

1.  On or about august 10, 2004, Plaintiff enrolled in a correspondence course namely, Blackstone Career Institute's Paralegal Course, to obtain a certificate in said course, and to further Plaintiff's education.

2.  On October 07, 2004, Plaintiff received a "Notice of Unauthorized Items" form from PKY CC's Mailroom stating that "Correspondence course is not allowed per Warden Flagg."

3.  On October 07, 2004, Plaintiff filed a grievance regarding the denial of said Blackstone Course per Warden Flagg's directive, citing violations of Plaintiff's First Amendment rights.

4.  On or about November 15, 2004, Plaintiff contacted the correctional counselor regarding the grievance that was filed on October 07, 2004. Plaintiff was advised by the counselor that there was "no grievance on file."

5.  On November 15, 2004, Plaintiff again submitted an additional grievance regarding the Blackstone Paralegal Correspondence course.

6.  On or about November 15, 2004, Plaintiff wrote a letter to Blackstone career Institute asking them to provide him a letter stating how many IDOC inmates are currently enrolled in said course.

7.  On December 02, 2004, Plaintiff received a letter from Blackstone dated November 19, 2004, stating that it had been more than one month since they (Blackstone) sent Plaintiff his first lesson and "...we noticed that we (Blackstone) had not received any exams"from Plaintiff.

8.  On December 10,2004,Plaintiff received a letter from Diane Kern, student services for Blackstone, advising Plaintiff that there are currently 75 individuals who are enrolled in their Paralegal program

while being incarcerated in the Illinois Department of Corrections. see exhibit ____

9.  on November 17, 2004, Plaintiff received a second "Notice of Un-authorized Items" form indicating that a second shipment of Plaintiff's course materials had arrived, but would be witheld. see exhibit ____

10.  On or about October 25, 2004, Plaintiff enrolled in a bible correspondence course from Crossroad Bible Institute. Plaintiff has since completed all twelve (12) lessons in said course; Plaintiff had no problems in sending or receiving the course materials or exams and lessons, as Plaintiff had while attempting to take the Blackstone course.

11.  On or about December 27, 2002, inmate Patrick Brown enrolled in a correspondence course relating to health care, of which he completed by taking a final exam on December 27, 2004, and did so without any denial per Warden Flagg. The aforesaid course required a proctor to come into the facility to administer said exam; Blackstone's course does not require a proctor, as all exams are completed and sent through U.S. Mail.

12.  Illinois Department of Corrections Departmental Rule (DR) 525(c) regarding publications reads, in pertinent part: "...It (Department) shal prohibit acceptance of any material it finds to be: 1. obscene, according to the definition of obscenity established by the U.S. Supreme Court; or 2. Presents a clear and present danger to the physical safety and security of the persons within the facility..."

13. Illinois Department of Corrections allows this type of course as previously stated in ¶ 6, by the fact that 75 inmates have, or are, currently enrolled in their (Blackstone's) course; it is the Administration, namely Warden Flagg, who has arbitrarily decided that inmates could not take this type of course.

14. By denying this course, while letting other inmates take different mail order/correspondence courses (Bible Study; Department of Public Health 'Peer Education (as taken by Patrick Brown)), Defendants Flagg, Evans and Walker, have violated Plaintiff's First Amendment rights, as well as Plaintiff's Fifth Amendment rights.

## IV   STATEMENT OF CLAIM    COUNT II

1. On or about 11/05/2003, Plaintiff was transferred into the custody of the IDOC, and placed at Stateville Correctional Center for the purposes of receiving and classification. While at said facility, Plaintiff was seen by Psychaitrist Richard Ibe, Ph.D.,DABPS, who confirmed Plaintiff's previously diagnosed mental disorder(s), made a referral to be placed in the care of a psychiatrist at the parent facility Plantiff will be placed at, and recommended placement at such a facility to ensure treatment of Plaintiff's mental disorders. (see Exhibit ____)

2. Plaintiff has suffered, and continues to suffer, from, inter alia, Schizoaffective disorder and chronic and severe Social Anxiety Disorder, for which he has been in the care of a psychiatrist since 1997. (see Exhibit ____)

3. On or about November 06, 2003, Plaintiff was transferred from Stateville C.C. to Pinckneyville C.C. to serve his Fifteen (15) year sentence.

4. On or about November 28, 2003, Plaintiff was seen by the Psychiatrist at Pinckneyville, Defendant Dr. Siddiqui, who abruptly discontinued all of Plaintiff's psychotropic medications that he had been taking since 1997 and that had been working for him, and placed on Trazedone.

5. Plaintiff questioned Defendant Siddiqui about why he his medications were being discontinued, as he had been taking them since 1997, and they were working just fine, Defendant Siddiqui then stated, in an indifferent manner, "Fine! I will take you off all medications...see if you get better then!", and proceeded to discontinue all of Plaintiff's medications.

6. For a period of over One (1) year, Plaintiff submitted numerous grievances, Health Care Requests, and even wrote letters to the Health care Unit Administrator, Defendant Brown, as well as letters to Defendants Evans, Flagg, Tracy, Walker and Bochantin, requesting to be put back on his medications.

7. On information and belief, the drug Trazedone is not administered for Social Anxiety Disorder, for which Plaintiff suffers; Selective Serotonin Reuptake inhibitors (SSRIs), Benzodiazepines, Monoamine Oxidase Inhibitors (MAOIs) and Beta-Blockers are the only classes of anti-depressants administered for Plaintiff's disorder; Trazedone falls outside of these classifications being that of an ATypical Anti-Depressant.

8. On information and belief, Social Anxiety Disorder is treated by

by behavioral therapy, such as Cognitive Behavioral Therapy, and Pharmacotherapy, using the drugs referenced in paragraph Number Seven (7) above.

9.  The symptoms of Social Anxiety Disorder for which the Plaintiff suffers are as follows:

    1.  A significant and persistant fear of one or more social or performance situations where you are exposed to unfamiliar people or evaluation of others. The fear is that you will act in a way(or show anxiety symptoms) that will be embarassing or humiliating; and

    2.  Developing anxiety and symptoms of severe anxiety and panic (such as blushing or rapid heartbeat) when you are exposed to the situation that you fear; and

    3.  Reconizing that your fears are unreasonable; and

    4.  Avoiding social situation that you fear, or else you endure them with intense anxiety or distress.

    5.  Significant interference with your daily activities and relationships created by the avoidance, anxious anticipation, or distress you experience in the feared situation; and

    6.  Being greatly distressed about having the anxiety and social anxiety disorder.(Web MD, http;//www. my.webmd.com/hw/mental_health/hw.asp, 2005

10. Plaintiff has had Social Anxiety Disorder since 1997, displaying 5 out of the 6 above referrecnced symptoms since 1997; and has had same since the day he entered the IDOC on November 06, 2003.

11. Throughout the approximately Fifteen (15) months that the Plaintiff resided at Pinckneyville C.C., Plaintiff's Social Anxiety progressively worsened as a direct result of the failure of Defendants Siddiqui, Brown, and Bochantin to adequately treat the Plaintiff's known mental health disorder(s); Plaintiff was only seen by Defendant Siddiqui on Three (3) ocassions in said Fifteen (15) month period. (see Exhibit ____)

12. On information and belief, when left untreated, mental health disorders not unlike the Plaintiff's, continue to degenerate and place same at risk of physical injury, as untreated mental disorders begin a downward spiral that often ends in suicide.

13. By Defendant Brown's own admission, Pinckneyville C.C. did not, and would not, provide any form of psychotherapy to Plaintiff.

14. By Defendant Siddiqui's own admission, the reason for discontinuing Plaintiff's medication(s) was that of the (medications) being cost-prohibitive.and/or "unavailable."

15. On information and belief, if a facility in which a prisoner resides cannot or is incapable of providing adequate health care to a prisoner's serious medical needs, the facility must arrange said care at a health care facility outside of the institution.

16. Defendant Brown is entrusted with the responsibility to arrange for outside health care treatment for prisoner's needing such care.

17. Pursuant to Illinois' Code of Criminal Procedure [730 ILCS 5/3-11-1 et. seq.], Furloughs, the law states, in pertinent part:

> 5/3-11-1. Furloughs
> § 3-11-1. Furloughs. (a) The Department may extend the limits of the place of confinement of a committed person under prescribed conditions, so that he may leave such place on a furlough...Such furloughs may be granted for a period of time not to exceed 14 days, for any of the following purposes:
>
> (2) To obtain medical, Psychiatric or psychological services when adequate services are not otherwise available.

18. At no time did the above named Defendants arrange for, or provide Plaintiff with, the adequate and necessary mental health treatment that was "unavailable" at Pinckneyville C.C., for the Fifteen (15) months that Plaintiff was incarcerated therein.

19. During said Fifteen (15) months at Pinckneyville C.C., Plaintiff's mental health deteriorated to the point that he often felt suicidal; avoided contact with people as much as possible by staying locked in his cell, and did not go to the dinning hall for meals. Instead, the Plaintiff only sustenance was obtained by the purchasing of food products off of the inmate commissary. (see exhibit ____)

20. As a direct and proximate resault of the aforesaid inability to eat in the dinning hall, due Plaintiff's Social Anxiety Disorder that the Defendants refused to provide treatment for, Plaintiff was forced to purchase food at the inmate commissary which, subsequently, placed a rather large financial burden on Plaintiff and Plaintiff's family which, but for the failure of Defendants to adequately treat Planntiff's mental health disorder(s), would not have ocurred.

21. During the aforesaid Fifteen (15) month period of incarceration that Plaintiff was residing at Pinckneyville C.C., Plaintiff incurred an actual financial debt of approximately $3,800, born of the purchases of food necessary for him to survive. (see Exhibit ____)

22. On March 25, 2005, Plaintiff was transferred from Pinckneyville C.C. to Shawnee C.C. as a result of retaliation for filing numerous grievances and a this lawsuit against Pinckneyville C.C.

23. Since Plaintiff's transfer to Shawnee C.C., he has received adequate mental health treatment for his mental heal disorders of which Pinckneyville C.C. and the Defendants failed completely to provide for over Fifteen (15) maonths; Plaintiff is now able to perform the fundamental functions necessary to living such as: Eating at the dinning hall, socializing in the dayroom, participate in educational classes, shower and otherwise take care of himself, and above all, is free

from the depression and suicidal feelings that he suffered so long while at Pinckneyville C.C., at the hands of the above named Defendants.

IV STATEMENT OF CLAIM - COUNT III

1. Pincneyville's grievance policies and procedures for the redress of grievances effectively amounts to no grievance procedure at all. upon submitting a grievance regarding the aforesaid egregious grievance policies and procedures in effect at pinckneyville C.C., the Defendants advised the Plaintiff to direct his grievances back to the Administration at Pinckneyville C.C. - the very people and/or policies and procedures that the Plaintiff was grieving.

2. On at least One (1) ocassion, Plaintiff's job in the Maintenance department was threatned due to the numerous grievances Plaintiff had filed against the Administration at Pincneyville C.C.

3. In or around January 2005, Plaintiff wrote th Office of Inmate Affairs advising them that his position as Maintenance Craftsman had been threatned, and he was in fear of retaliation. (see Exhibit ____)

4. On Febuary 03, 2005, Plaintiff was in fact fired from his position in maintenance, which he had held for over One year, in retaliation for filing said grievances and this action.

5. Since entering the IDOC on November 05, 2003, Plaintiff has never received any diciplinary action whatsoever, nor has Plaintiff infracted any IDOC rules.

6. On at least Three (3) ocassions, the plaintiff was advised by his supervisor, Terry Eplin, and the Tool Control Officer, Rob Waldron, that he "better 'lay off' writing grievances", as the administration was looking for a reason to fire him.

7.  In the latter part of January, 2005, Plaintiff received a response to his letter from the Office of Inmate Affairs. In said letter, the OOIA advised the Plaintiff to address his grievance(s) to the administration at Pinckneyville C.C. - the very people with whom he had written a grievance against.

8.  On information and belief, IDOC Departmental Rules prohibit the answering of inmate grievances by any party that they are lodged against or who is named therein. Therefore, by Pinckneyville's administration answering said grievance, they would be addressing a grievance about theirselves.

## IV STATEMENT OF CLAIM - COUNT IV

1.  On or about June 16, 2004, Plaintiff went to the Health Care Unit (HCU) at Pinckneyville C.C. to receive his weekly blood-glucose test for his diabetes.

2.  Upon arrival and subsequently being called for said test, the Plaintiff clearly informed Defendant Saurhage that he wished to refuse the test at that time, and asked for a refusal form.

3.  Defendant Saurhage then proceeded to state "oh, you don't want to do that" and, at the same time, grabbed Plaintiff's left hand and stuck his finger to draw the requisite blood for said test.

4.  A witness to the whole event, Jason Stephensons, signed an Affidavit attesting to the aforesaid events. A copy of which is attached hereto and incorporated herein. (see exhibit ____)

## IV STATEMENT OF CLAIM - COUNT V

1.  On or about June 15, 2004, the Plaintiff suffered a severe chemical burn to his right elbow area, approximately Two inches in diameter, while employed as a Maintenance Craftsman at Pinckneyville C.C.;

Plaintiff immediately sought medical attention at the Health Care Unit (HCU) at Pinckneyville C.C.

2. Defendant Dr. Feinerman failed to provide adequate, or any, medical care whatsoever regarding said burn, in that said burn was not cleaned and bandaged to prevent infection, nor was any antibiotic ointment or oral antibiotics prescribed to prevent infection; and pain medication was not prescribed. (see exhibit ____)

3. Plaintiff asserts that another inmate, Patrick Brown, suffered a burn of lesser significance, and his burn was treated in an adequate and proper manner, in that inmate Brown's burn was cleaned immediately, ointment was applied, antibiotics and pain medication were prescribed; Inmate Brown's wound dressings were also changed at a frequency of no less than Three (3) times a day, and continued throughout the healing process.

4. As a direct and proximate result of the Negligence and deliberate indifference to Plaintiff's serious medical needs, Plaintiff's wound became infected and Plaintiff suffered severe pain and scarring that he will continue to suffer for the rest of his life.

5. On information and belief, institutions such as penitentiaries, have a high rate of virus and bacteria at any given time; Staphylococcal infections are quite prevalent, and can be easily contracted.through casual contact, causing a host of infections.

6. On information and belief, Inmate Brown was told by Defendant Feinerman that his burn must be taken care of properly with the application of clean bandages, ointment and antibiotics, due to the strong probability of infection in the prison setting.

7. Due to Defendant Feinerman's deliberate indifference and his negli-

gence, Plaintiff was put at a severe risk for infection, and his wound area developed scarring that will remain present throughout the rest of Plaintiff's life.

## IV STATEMENT OF CLAIM – **COUNT VI**

1.  Plaintiff suffers from a herniated disc(s) between L5-S1, with disc degeneration at L4-L5 and L5-S1, of which was re-diagnosed by Plaintiff's Neurosurgeon, Dr. Ronald Michael, M.D. on or about November 01, 1999.

2.  Plaintiff was scheduled for surgery to correct the aforementioned back problems but, for personal reasons, had to reschedule the procedure until after the new year; before Plaintiff could have the surgery performed, he became incarcerated in the IDOC.

3.  In or around December 2003, Plaintiff's back problems and subsequent pain associated with the aforesaid conditions, began to increase; and Plaintiff brought his back problems to the attention of the Defendants (see exhibit ____)

4.  For the next Fifteen (15) months, while residing at Pinckneyville C.C. Plaintiff made numerous requests to be seen by the Defendant Feinerman due to the pain that he was experiencing, and to seek treatment for his previously diagnosed back conditions.

5.  During the same Fifteen (15) month period as outlined above, the Defendant Feinerman failed completely to treat Plaintiff for his back conditions and subsequent pain; the Defendant failed to re-evaluate Plaintiff's condition through the use of standard tests such as MRI's, or X-Rays; Plaintiff provided the Defendant with his medical records reflecting his previous diagnosis by his Neurosurgeon, but Defendant displayed a deliberately indifferent attitude to Plaintiff's serious

medical needs, and failed to prescribe anything for Plaintiff's pain.

6. The defedants told Plaintiff that since his injury ocurred "on the street", that he would not be treated for it, nor would pain medication be prescribed due to it being "unavailable", and due to the costs associated with providing treatment for Plaintiff's back injury.

7. As a direct and proximate result of the Defendants willful and wanton negligence, Plaintiff suffered severe pain and emotional distress, as he was forced to endure the pain without even so much as an aspirin, for the Fifteen (15) months he resided at Pinckney-ville C.C.

8. Plaintiff's back injury ocurred in or around 1997, before his first incarceration, which was on or about April 28, 1998.

9. Plaintiff was placed at East Moline Correctional Center (EMCC) to serve his sentence of Three (3) years, and was experiencing the same pain from the same back injury that Plaintiff now suffers,and suffered for the Fifteen (15) months while incarcerated at Pinckney-ville C.C.

10. During Plaintiff's incarceration at EMCC, his back problems and as-sociated pain were treated adequately in that The IDOC and Health Care staff at EMCC prescribed, inter alia, Physical therapy, steroid-al injections into Plaintiff's spine and pain medication such as Ty-lenol, Ibuprophen, Robaxin, Vistaril, and narcotic pain medications such as Darvocet N-100,and Darvon, to ease the Plaintiff's pain due to his back injury. (see exhibit ____)

11. Plaintiff asserts that he presently suffers and previously suffered,

from the same back problems as he did in 1998, while incarcerated at EMCC; yet Plaintiff was denied any medical care whatsoever by Defendants while residing at Pinckneyville C.C. for the Fifteen (15) months he resided there.

12. The Illinois Department of Corrections (IDOC) has several facilities throughout Illinois of which it houses its inmate poulation. East Moline Correctional Center (EMCC) and Pinckneyville Correctional Center (PKY) are part of Illinois Correctional department.

13. The medical professionals are employed by the State of Illinois Department of Corrections and/or a contracted medical services provider. The job of these medical professionals is to provide adequate medical care to the State's inmate population that reside in its correctional institutions.

14. Since the inmates of the IDOC cannot choose their health care provider, or have access to an alternate means of health care, the IDOC has to provide adequate health care to all of its inmates; the same standard of health care that an inmate would receive, but for his incarceration, as such the denial of health care services or the "unavailability" of drugs with which to treat said inmates, or that services and/or drugs are cost-prohibited cannot be an acceptable basis with which to deny said medical care.

15. Plaintiff received adequate medical care while incarcerated at another IDOC facility, by a State-employed IDOC physician in the past, yet the same class of physicians employed by and through the IDOC and the State of Illinois, have willfuly and wantonly cause the Plaintiff to suffer undue pain and suffering as a direct result of failing to provide any medical treatment whatsoever for plaintiff's serious medical Needs.

V. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requsts that this Honorable Court grant him the following relief:

A. Issue a declaratory order stating that:

1. The Defendants Evans and Flagg violated Plaintiff's first Amendment Constitutional rights by witholding the Blackstone correspondence course; and discriminated against Plaintiff by allowing other inmates to participate in bible and Health Care correspondence courses; and

B. Award Compensatory damages in the following amounts:

1. $50,000 against Defendant Saurhage for the pain and suffering she caused Plaintiff by the tortuous act of Assault and battery upon Plaintiff's person; and

2. $875 jointly and severally against Defendants Evans and Flagg for the cost of the Blackstone correspondence course that they denied Plaintiff access to; and

3. $500,000 jointly and severally against Defendants Evans, Brown, Bochantin and Siddiqui for the extreme emotional pain and suffering, severe mental anguisn and emotional distress Plaintiff endured as a direct result of the complete and total failure to provide Plaintiff with any mental health care treatment whatsoever; and

4. $500,000 jointly and severally against Defendants Brown, Bochantin and Feinerman for the extreme pain and suffering, mental anguish and emotional distress caused by the Defendant's complete and total failure to treat Plaintiff's Known back problems and subsequent sciatica pain; and

5.  $50,000 jointly against Defendants Feinerman, Bochantin, and Brown for the pain and suffering and resultant scarring from the Defendant's failure to adequately and completely treat Plaintiff's burn to his right elbow area.

C.  Award Punitive damages in the following amounts:

1.  $10,000 against Defendant Saurhage for the pain and suffering she caused Plaintiff by the tortuous act of Assault and Battery upon the Plaintiff's person; and

2.  $10,000 jointly and severally against Defendants Evans and Flagg for violating Plaintiff's First Amendment rights by and through denying Plaintiff the Blackstone Correspondence course; and

3.  $10,000 jointly and severally against Defendants Evans, Brown, Bochantin and Siddiqui for the extreme emotional pain and suffering, severe mental anguish and emotional distress Plaintiff was forced to endure as a direct and proximate result of the Defendant's complete and total failure to provide Plaintiff with any mental health care treatment whatsoever; and

4.  $10,000 jointly and severally against Defendants Brown, Bochantin and Feinerman for the extreme pain and suffering, mental anguish and emotional distress caused by the Defendant's complete and total failure to treat Plaintiff's known back problems and subsequent sciatica pain; and

5.  $10,000 jointly against Defendants Feinerman, Bochantin, and Brown for the pain and suffering and resultant scarring from the Defendant's failure to adequately and completely treat Plaintiff's burn to his right elbow area.

D.  Grant such other relief as it may appear that Plaintiff is en-

titled.


DATE:  ___4/24/06___                    Respectfully Submitted,


                                        /S/  _____
                                        Scott R. Ducey, K-64368
                                        Plaintiff, pro se
                                        Shawnee Correctional Cntr.
                                        Hwy. 146 East, PO box 400
                                        Vienna, IL. 62995