IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT DUCEY, K64368 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-102-MJR-DGW |
| | ) |
| ROGER E. WALKER, et al. | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by defendant Adrian Feinerman, M.D. ("Feinerman") (Doc. 74).

On February 19, 2009, the Court issued a Report and Recommendation on this motion, and made a recommendation to the District Judge to grant Defendant's motion primarily because Plaintiff did not include any evidence in his response. *See* Docs. 84, 86. The District Judge has since discovered that on November 19, 2008, Plaintiff sent in several documents to the Clerk of this Court that he maintains defeat's Feinerman's motion. *See* Doc. 92. Consequently, District Court Judge Reagan rejected the first report and recommendation and recommitted Defendant's motion to the undersigned for another report that considers those documents. *See* Doc. 90. Having now reviewed Plaintiff's documents (Doc. 92), the Court's position has not changed. For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be

1

**GRANTED**, and that the Court adopt the following findings of fact and conclusions of law:

## FINDINGS OF FACT

Plaintiff Scott Ducey is an inmate who was incarcerated at the Pinckeyville Correctional Center (PCC) from November 14, 2003, through March 24, 2005 (Doc. 74-2, ¶¶ 9, 63.) Defendant Adrian Feinerman, M.D. serves as Acting Medical Director for the PCC, where he, along with other medical professionals, provides medical care and treatment to inmates residing there. *Id.* at ¶¶ 4, 6-7. Before plaintiff was incarcerated, he began to experience severe back pain. *Id.* at ¶ 66. In 1999, he had a MRI that revealed he had a right L5-S1 disc herniation at L4-L5 and LS-S1. *Id.* The physician who treated him at the time gave him three options: live with the pain, pursue conservative treatment including physical therapy and/or lumbar epidural steroid injections, or undergo surgery (Doc. 74-4). Plaintiff told his doctor that he would consider his options and get back with him; however, he never did contact his doctor (Doc. 74-2, ¶ 68).

Five years later, in 2004, Plaintiff began experiencing back pain again while residing at the PCC. On June 2, 2004, Plaintiff told Defendant about his back problems. *Id.* at ¶¶ 20-21. Defendant knew Plaintiff because he had previously examined and treated him three times for diabetes and cholesterol that year; however, Plaintiff had not ever mentioned his back pain to Defendant until that day. *Id.* at ¶¶ 10-14; *Id.* at ¶¶ 20-21. Defendant examined Plaintiff and, during his examination, Defendant observed Plaintiff standing on both toes and squatting. *Id.* at ¶ 20. Defendant prescribed Plaintiff exercises to help with his pain and ordered Plaintiff's old medical records to further assess his condition. *Id.* at ¶21.

While Defendant waited to receive Plaintiff's medical records, Plaintiff went to Defendant to receive treatment for a chemical burn that occurred while he was working in PCC's

maintenance department. *See* Pl.'s Dep. at 21:16-18; Doc. 74-2, ¶¶ 24, 70. Defendant determined Plaintiff's chemical burn, which was on his arm, was a first degree burn (Doc. 74.2, ¶¶ 24, 70). He therefore decided that, other than directing Plaintiff to clean it regularly, no further treatment was needed unless infection occurred because a first degree burn is the least type of serious burn. *Id.* Defendant is not aware of Plaintiff's burn ever becoming infected because Plaintiff never came to him about the burn on his arm ever again. *Id.* at ¶ 70.

On June 29, 2004, Plaintiff complained to Defendant that his back was still hurting. *Id.* at ¶¶ 30-31. Defendant examined him and saw that Plaintiff had a full range of motion in his spine, and further observed Plaintiff squatting and standing on his toes and heels. *Id.* Once again, Defendant prescribed exercises to help with plaintiff's pain. *Id.* In addition to Defendant, PCC nurses and at least one other doctor examined Plaintiff for back problems. *Id.* at ¶¶ 32, 35, 36. The nurses who examined Plaintiff prescribed him Tylenol and instructed him about the use of heating applications. *Id.*

In March of 2005, Plaintiff was transferred from PCC to another correctional facility. *Id.* at ¶ 63. Before his transfer, however, Plaintiff went to see Defendant two last times about his back pain. *Id.* at ¶¶ 40-51. Defendant came to conclusion that Plaintiff was not suffering from any acute problem with his back. *Id.* at ¶ 40. On February 21, 2005, Defendant diagnosed him with chronic low back pain, and, once again, prescribed him exercises. *Id.* at ¶ 51. Defendant also advised plaintiff about "the use of anti-inflammatory drugs to help with the pain." *Id.* Based on his examination and a review of Plaintiff's medical records, Defendant did not believe that an MRI was necessary to diagnose the problems triggering Plaintiff's complaints. *Id.* at ¶ 31. Defendant saw Plaintiff for the last time in March of 2005, when he treated Plaintiff in the prison

infirmity for three consecutive days for an unrelated illness. *Id.* at ¶ 59. During these three days, however, Plaintiff did not speak to Defendant about his back. *Id.*

On February 16, 2005, Plaintiff filed a complaint against Defendant pursuant to 42 U.S.C. § 1983, alleging Defendant violated the Eighth Amendment by being deliberately indifferent to his serious medical needs (Doc. 1).[1] He raises two claims against Defendant. First, he contends Defendant was deliberately indifferent to the chemical burn on his arm because Defendant never cleaned it nor placed a bandage on the burn (Doc. 16). Plaintiff further alleges Defendant failed to treat his burn in the same manner as he treated another inmate's burn. *Id.* Plaintiff secondly contends Defendant was deliberately indifferent to Plaintiff's back problems because Defendant did not provide him with any medicine for his pain and failed to use MRI's and CAT Scans. (Docs. 1, 16). Defendant moved for summary judgment on September 4, 2008 (Doc. 74), to which Plaintiff responded on December 8, 2008 (Doc. 84).

## CONCLUSIONS OF LAW

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haefling v. United Parcel Service, Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, 16 F.3d 832, 836 (7th Cir. 1994). Specifically, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 320 (1986). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the

---
[1] Plaintiff subsequently amended his Complaint two times (Docs. 9, 16).

existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999); *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons*, Inc., 105 F.3d 343, 346 (7th Cir. 1997); *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994); *Dempsey*, 16 F.3d at 836. Summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller*, 168 F.3d at 312; *Plair*, 105 F.3d at 347; Cf. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1993); *Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993). When deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Haefling,* 169 F.3d at 497-98.

### *Plaintiff's Deliberate Indifference Claims*

In *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983. The Court stated "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* This prohibition applies to "both prison doctors in their response to the prisoner's needs [and] to prison guards" who interfere with an inmate's access to medical care. *Id.* Thus, to prevail on an Eighth Amendment claim, a prisoner must show that "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it." *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001).

Defendant first contends that plaintiff's claim concerning the chemical burn on his arm is not a "serious medical need" within the meaning of the Eighth Amendment (Doc. 74-2, ¶¶ 24, 70, 72). Upon examining Plaintiff, Defendant determined that Plaintiff's burn did not require any medical treatment, but he did instruct Plaintiff to clean it frequently in order to avoid infection. (Doc. 74-2 at ¶ 24). Defendant further maintains Plaintiff complained to him only once about his burn throughout the two year time frame plaintiff was incarcerated at PCC, and to his knowledge, Plaintiff's burn never became infected (Doc. 74-2, ¶ 70). Plaintiff admits that he only saw Defendant once for his burn. (Pl.'s Depo. at 26: 23-24). He also concedes that, within four months, his burn was completely healed (Pl.'s Dep. at 25:4-8). Plaintiff nevertheless

contends Defendant is liable under 42 U.S.C. §1983 because, the burn could have caused infection and Defendant did not treat it. *See* Doc. 92-2, p. 24.

The Court agrees with Defendant on this issue. "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001); *Foelker v. Outagamie County*, 394 F.3d 510 512 (7th Cir. 2005). An objective "serious medical condition" requires more than frequently cleaning and one trip to a doctor. Summary judgment is therefore proper for this claim.

As for Plaintiff's second claim that Defendant violated 42 U.S.C. §1983 by being deliberate indifferent to his back problems, Defendant does not suggest that Plaintiff's herniated disc is not a serious medical need. Defendant claims, however, that when he treated Plaintiff for his back pain, he was not deliberately indifferent to Plaintiff's medical needs.

Plaintiff admits that he saw Defendant several times about his concerns with his back; however, he contends Defendant's treatment amounted to "inadequate care" because Defendant not only failed to prescribe Plaintiff any pain medication, he also advised Plaintiff to purchase Tylenol from the commissary if he needed to. *See* Doc. 92-2, pp. 31, 47; Pl.'s Dep. at 31:1-2. Plaintiff further takes issue with Defendant's decision to only prescribe him exercises, and to refrain from pursuing alternative forms of treatment that were suggested by his former doctor (Pl.'s Dep. at 31:18-32:2). Plaintiff's former doctor gave Plaintiff three possible options in 1999: to live with the pain, pursue conservative treatment, including physical therapy and/or lumbar epidural steroid injections, or have surgery (Doc. 74-4). A year before that Plaintiff's doctor recommended that Plaintiff go through a "comprehensive exercise program" to help his condition. *See* Doc. 92, p. 28. Thus, Defendant maintains his prescription directing Plaintiff to

exercise, and his suggestion that Plaintiff take anti-inflammatory medication, was consistent with the conservative treatment Plaintiff's former doctor recommended (Doc. 74-2, ¶ 69). Defendant also did not believe that "long-term use of Tylenol" for Plaintiff's condition was medically necessary. *See* Doc. 92-2, p. 49.

A doctor is not deliberately indifferent to an inmate's serious medical needs unless he or she makes a decision that represents "such a substantial departure from accepted professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The medical professional must be more than just negligent or even grossly negligent. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). Rather, the evidence should reveal that the defendants "acted with a sufficiently culpable state of mind" such that the "defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citation omitted); *Wynn*, 251 F.3d at 593. Moreover, "deliberate indifference is simply a synonym for intentional or reckless conduct, and reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Foelker v. Outagamie County*, 394 F.3d 510 512-513 (7th Cir. 2005); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (stating that "liability attaches only if the conduct is intentional or criminally reckless.").

The evidence both parties have provided to the Court shows that Defendant's conduct in treating Plaintiff does not rise to deliberate indifference. In fact, Plaintiff's documents only show that Plaintiff is unhappy with the type of medical treatment. But Defendant ordered Plaintiff's medical records from the doctor who conducted a MRI and identified Plaintiff's herniated discs. Plaintiff saw Defendant "numerous times" about his back. Defendant additionally spoke to

Plaintiff about medicine that could help with his pain and prescribed him exercises, which Defendant describes as "conservative treatment." Defendant further determined that Plaintiff's chronic back pain was not acute; therefore, he did not believe that he needed to give Plaintiff a MRI to treat Plaintiff. "There is not one proper way to practice medicine in a prison." *Jackson,* 541 F.3d at 698. Therefore, medical professionals must only provide "medical treatment that reflects professional judgment, practice or standards." *Id.* This Court finds that Defendant's medical decisions and judgments in this case do not "represent cruel and unusual punishment" and the Court will therefore accord them deference. *Jackson,* 541 F.3d at 698 (citations omitted) (noting a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment [therefore] . . . a medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.")

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1, the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 11, 2009**

                                       s/ *Donald G. Wilkerson*
                                       **DONALD G. WILKERSON**
                                       **United States Magistrate Judge**